IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KEITH ALSTON,

        Plaintiff,

v.                                              Civil Action No. 3:21-cv-733

WILLIAM ANDERSON, et al.,

        Defendants.

## OPINION

Keith Alston worked as a part-time tester/trainer for the Virginia Department of Motor Vehicles ("DMV") from January 2018 through March 2020. Although his contract required that he not exceed 29 hours per week or 1,500 hours within the calendar year, Alston regularly worked 40 hours or more per week. The DMV only paid Alston for some of the hours he worked. Alston asserts claims against three DMV employees—William Anderson, Jeffrey Harper, and Tracey Keller—for violations of the Fair Labor Standards Act ("FLSA") and associated regulations, Title VII of the Civil Rights Act of 1964 ("Title VII"), and various Virginia statutes.[1] He seeks $332,633.00 in damages.

The defendants moved to dismiss Alston's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. Because sovereign immunity bars Alston's FLSA claim against the DMV and Alston fails to state a Title VII claim, the Court will dismiss Alston's federal claims with prejudice. Because the Court

---

[1] Specifically, he alleges violations of the "Overtime VA Statute," Va. Code Ann. § 40.1-29.2 (2022); "Retaliatory action against employee," Va. Code Ann. § 40.1-27.3 (2022); "Holiday Pay VA Statute," Va. Code Ann. § 15.2-1605 (2022); and the "Virginia Human Rights Act," Va. Code Ann. §§ 2.2-3900 to 3909 (2022). (ECF No. 4, at 8, 12.)

will dismiss Alston's federal claims, the Court declines to exercise supplemental jurisdiction over Alston's state law claims and will dismiss those claims without prejudice.

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT[2]

In January 2018, the DMV hired Alston as a tester/trainer in its Workforce Efficiency Group ("WEG"). The DMV paid Alston $22.00 per hour. Alston's hourly employee contract exempted him from most state benefits and limited him to working "no more than 29 hours per week over the course of a twelve-month period [from] May 1-April 30." (ECF No. 4-1, at 1.) The contract designated Alston as an at-will employee.

On February 26, 2018, Keller, Alston's manager, asked Alston to "lead a project that required supervision of 9 full time contract workers." (ECF No. 4, at 11.) Starting the week of March 4, 2018, Alston worked 40 hours per week.[3] After working this schedule for two weeks, Alston became concerned that the DMV would not pay him for all the hours he worked because his employment contract only allowed him to work 29 hours per week over a twelve-month period. Keller, however, reassured Alston that the DMV would pay him for the additional hours worked. On March 23, 2018, Alston entered 80 hours for his previous pay period into the timecard system. Keller rejected Alston's timecard and instructed him to subtract an hour each day for lunch from the previous week, even though Alston "had already deducted lunches." (*Id.* at 3.) After Alston resubmitted his hours with the time deducted for lunch, the DMV accepted Alston's timecard but failed to pay him for the full 80 hours worked.

---

[2] Several times throughout the Amended Complaint, Alston refers to pay periods after March 2020, the month the DMV let him go. The Court, therefore, construes the references to 2021 as typographical errors and corrects those years in the Facts section. But even if the Court has misunderstood the timeline, the conclusions in this Opinion would not change.

[3] Alston continued working 40 hours or more per week until the DMV terminated him in March 2020.

2

On August 23, 2018, the DMV asked Alston to join its Remote Processing Project. This project included extensive travel to "every DMV statewide" to train employees on a new initiative. (*Id.* at 4.) Alston accepted the position with the understanding that he would begin a full-time analyst position with the DMV before the project ended or when he exhausted all 1,500 hours under his contract. During the project's fifteen-month period, Alston traveled to sixty-eight DMV locations. His work responsibilities "increased 3 fold" and required him to "stay[] at hotels for 6 weeks at a time" without any help from the full-time analysts. (*Id.* at 4-5.) The DMV did not compensate Alston for travel time during this period.

In January 2019, Alston worked 59 hours in one week. Alston asked Keller and Harper, the WEG Director, to assure him that the DMV would pay him for the additional hours he worked each week. Both Keller and Harper reassured Alston that he would receive payment for all hours he worked. Specifically, Harper "claimed that overtime was approved by his superior and [Alston] would be paid for all hours worked and would receive a promotion at the end of the project." (*Id.* at 11.)

During the twelve-month period starting February 19, 2019, Alston worked "on holidays, weekends, and overtime." (*Id.* at 12.) When the head of the Remote Processing Project retired in June 2019, Alston took over the project and "worked 40+ hours per workweek going to an average of 3-4 DMV locations per week." (*Id.* at 4.) Due to his "constant travel," the DMV provided Alston with a state vehicle for ten months out of the year. (*Id.* at 11.) The DMV told Alston that he would receive compensation for all working hours during this period, including overtime hours, holiday pay, and travel time. But the DMV did not pay Alston for his work on state holidays, did not pay him at holiday rates, and denied his requests for time off.

In March 2019, Alston again notified Keller that the DMV had not paid him for all the hours he worked. By that point, the DMV had not paid Alston for 156 hours. Keller again "assured [Alston] that he would get paid for all hours worked, including holiday pay and overtime." (*Id.* at 11.) Alston later received a paycheck for $0.00 despite working 83 hours during the pay period because he failed to use the "in-house time system" to complete his timecard. (*Id.* at 11–12.) Alston alleges that he could not use the in-house system from his remote travel location.

Between April 28, 2019, and May 11, 2019, Alston worked 81 hours and spent 12 additional hours traveling to different DMV locations, but the DMV only paid him for 65 hours of work. For a two-week pay period in January 2020, Alston worked 85.4 hours. Initially, he did not receive a paycheck at all. Then, he received an "IOU" for the overtime hours from Keller. When Alston spoke with the DMV's HR department about the issues with that paycheck, they told him that Keller and Harper had changed his timecard.

Throughout his employment, Alston tried to "rectify the problem" many times by speaking with Harper, Keller, and the DMV payroll and HR departments. (*Id.* at 8, 12.) In March 2020, Harper terminated Alston because he had exceeded his position's 1,500-hour allotment. The DMV still had not paid him for the hours he worked overtime, on holidays, and while traveling. Alston alleges that during this entire period he worked 40 hours or more per week without receiving pay for overtime or total hours worked. The DMV has since removed Alston's timecards and pay information from the State Online Payline System for most of the time he worked there.

## II. LEGAL STANDARD

### A. Pro Se Litigants

The Federal Rules of Civil Procedure require a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Courts do not hold *pro se* complaints to the same stringent standards of formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, courts construe *pro se* complaints liberally. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). This principle of liberal construction, however, has its limits. *Id.* Courts need not discern the unexpressed intent of the plaintiff or assume the "improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*

### B. Dismissal Standards

The defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under Rule 12(b)(1) places the burden on the plaintiff to prove the court has subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When considering a Rule 12(b)(1) motion, the Court presumes the truth of the facts asserted in the complaint. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* A claim is plausible on its face when enough factual allegations have been made "to raise a right to relief above the

speculative level" and across the line "from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007).

## III. DISCUSSION

Applying the principles of liberal construction, Alston's complaint asserts the following claims: (1) unpaid wages in violation of the FLSA; (2) pay discrimination in violation of Title VII; and (3) violations of several Virginia statutes.

The defendants move to dismiss Alston's FLSA claim for lack of subject matter jurisdiction based on state sovereign immunity. The defendants move to dismiss Alston's Title VII claim for failure to state a claim because Alston fails to allege facts necessary to establish a discrimination claim. The defendants raise numerous other challenges to the remaining state law claims, which the Court will not address because it will decline to exercise supplemental jurisdiction over those claims.

### *A. FLSA Claim*[4]

The defendants argue that state sovereign immunity bars Alston's FLSA claims because the DMV, as an agency of the Commonwealth of Virginia, is the real party in interest in this matter. Under the Eleventh Amendment, state sovereign immunity protects the state and its agencies, departments, and officials from legal actions against it. *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). The Court lacks subject matter jurisdiction over claims barred by state sovereign immunity. *See Kramer v. United States*, 843 F. Supp. 1066, 1068 (E.D. Va. 1994). Thus, when the state is the real party in interest, the Eleventh Amendment requires dismissal of the action

---

[4] In addition to the FLSA, Alston asserts claims pursuant to the "Portal to Portal [A]ct 29 CFR § 783.36" and "[t]ravel that keeps employees away from home overnight 29 CFR § 785.39." (ECF No. 4, at 2, 5, 7–8, 12.) These regulations amend and fall under the FLSA, and thus, the Court considers these allegations part of Alston's FLSA claims.

6

under Federal Rule of Civil Procedure 12(b)(1). *Martin v. Wood*, 772 F.3d 192, 196 (4th Cir. 2014).

The DMV, as a department of the Commonwealth of Virginia, enjoys the privileges of immunity.[5] This immunity extends to state officials sued in their official capacity but does not extend to its officials sued in their individual capacity. *Garrett v. Clarke*, 552 F.Supp.3d 539, 553 (E.D. Va. 2021) (citing *Lewis v. Clarke*, 137 S. Ct. 1285, 1292 (2017)). When a plaintiff names a defendant in an individual, yet nominal, personal capacity so that the state is the "real, substantial party in interest," state sovereign immunity attaches to the respective state officials. *Id.* (quoting *Martin*, 772 F.3d at 195–96).

Alston filed suit against three DMV employees but did not specify whether he brings his claims against the defendants in their individual or official capacities. (ECF No. 4, at 11–12.) "[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Thus, to determine the applicability of state sovereign immunity, the Court must first determine whether the defendants are named in their individual capacity or if the state is the "real, substantial party in interest." *Martin*, 772 F.3d at 195.

"To identify the real, substantial party in interest," the Fourth Circuit requires courts to "examine *the substance* of the claims stated in the complaint." *Id.* at 196. Courts, therefore, must

> posit[] inquiries such as: (1) were the allegedly unlawful actions of the state officials "tied inextricably to their official duties,"; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be "institutional and official

---

[5] *See Brown v. N.C. Div. of Motor Vehicles*, 166 F.3d 698, 705 (4th Cir. 1999); Va. Code Ann. § 46.2-200 *et seq.* (creating the DMV under state statute).

7

in character," such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions *ultra vires*.

*Martin*, 772 F.3d at 196 (internal quotations and citations omitted); *see Hengle v. Asner*, 433 F. Supp. 3d 825, 887 (E.D. Va. 2020) (quoting *Martin*, 772 F.3d at 195–96).

In *Martin*, the Court held that sovereign immunity barred the plaintiff's claim because she "allege[d] that [her supervisors] had authority to authorize overtime pay and refused to do so and that, if they had authorized overtime pay, it would have been funded by Eastern State Hospital." *Martin*, 773 F.3d at 196. These allegations led to "[t]he inevitable conclusion . . . that [the supervisors'] actions were 'inextricably tied' to their official duties at the Hospital. In these circumstances, . . . Virginia is the real party in interest." *Id.* Similarly, here, Alston alleges that Keller and Harper had the authority to authorize pay for all hours he worked, which the DMV would have funded. Keller and Harper's actions, therefore, were inextricably tied to their official duties, and the DMV, not Keller and Harper, would have paid the additional hours had they approved them.[6] Moreover, Alston has not alleged that Keller or Harper acted to further personal interests distinct from the DMV's interests or otherwise acted *ultra vires*. For these reasons, the Court will treat the DMV, and through it, the Commonwealth of Virginia, as the real party in interest in this case. Eleventh Amendment immunity therefore applies.

Alston can overcome the Eleventh Amendment immunity bar if one of three exceptions applies: (1) Congress abrogated state sovereign immunity; (2) the plaintiff seeks only prospective or injunctive relief against a state agent; or (3) the state expressly consents to suit or waives its

---

[6] *See Boykin v. Virginia*, No. 3:14cv811, 2015 WL 5020896, at *11 (E.D. Va. Aug. 20, 2015) (concluding that the first two elements were met where the decision to deny the plaintiff's leave came from their supervisors, and had supervisors granted the plaintiff's request for leave, the state agency would have borne the burden of providing leave).

8

immunity. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Ex parte Young*, 209 U.S. 123, 159–60 (1908).

In this case, none of the sovereign immunity exceptions apply. First, the Fourth Circuit has held that Congress could not abrogate a state's immunity from suit under the FLSA. *See Abril v. Virginia*, 145 F.3d 182, 189–91 (4th Cir. 1998). Second, Alston seeks money damages for past harm, not prospective or injunctive relief. Third, Virginia has not expressly consented to suit or waived its immunity under the FLSA. Virginia waives its state sovereign immunity only when a statute "has explicitly and expressly announced such a waiver." *Ligon v. Cty. of Goochland*, 279 Va. 312, 317, 689 S.E.2d 666, 669 (2010). The Court cannot find, nor does Alston cite, any statute waiving Virginia's sovereign immunity with respect to the FLSA, and Virginia courts have recognized that no such waiver exists. *See id.*; *Commonwealth v. Luzik*, 259 Va. 198, 208–09, 524 S.E.2d 871, 878 (2000) (concluding that Virginia has not consented to a waiver of its sovereign immunity for FLSA claims). Thus, the third exception does not apply. Because the DMV is the substantial party in interest and none of the immunity exceptions apply, state sovereign immunity bars Alston's claims against the defendants.[7]

---

[7] Alston tries to circumvent the state sovereign immunity bar in his response by citing two additional Virginia Code sections and arguing gross negligence by Keller and Harper. (ECF No. 21, at 1–3.) Alston cannot amend his complaint and raise new claims against the defendants in a motion to dismiss. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). In any event, even if the Court granted Alston leave to amend his complaint, sovereign immunity would still bar these claims. *See Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 731 (E.D. Va. 2015) (citing Va. Code Ann. § 8.01–195.3) ("Although the Virginia Tort Claims Act waives the *Commonwealth's* sovereign immunity in limited situations . . . the immunity of the Commonwealth's agencies and those agencies' agents and employees remains undisturbed" in negligence actions).

9

### *B. Title VII Claim*[8]

The defendants move to dismiss Alston's Title VII claim for failure to state a claim. Under the facts alleged, Alston fails to establish the necessary elements of a Title VII claim. Accordingly, the Court will dismiss Alston's Title VII claim.

"Title VII of the Civil Rights Act of 1964 . . . prohibits employment discrimination on the basis of race, color, religion, sex, or national origin." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Under Title VII, the plaintiff can sufficiently state a claim by alleging "facts that plausibly state a violation of [the elements of] Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). Alston alleges both violations of Title VII and "disparate treatment discrimination." (ECF No. 4, at 2.) The Court, therefore, will construe Alston's claim as a disparate treatment claim under Title VII. To state a disparate treatment claim under Title VII, a plaintiff must plead facts showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190.

A plaintiff alleging employment discrimination under Title VII can state a claim by alleging: (1) "'direct or circumstantial evidence' that discrimination motivated the employer's

---

[8] The defendants also contends that Alston "failed to file this lawsuit within 90 days of the EEOC's Notice of Right to Sue" and "[a]s such, his right to sue based on his charge of discrimination was lost." (ECF No. 16, at 14.) Under Title VII, a plaintiff must file their claim within ninety days of the EEOC notifying them of their right to sue. *See* 42 U.S.C. § 2000e-5(f)(1). "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851 (2019). Because the Court concludes that Alston fails to state a claim under Title VII, the Court need not assess whether Alston timely filed his claim.

employment decision" or (2) facts sufficient to plausibly establish a prima facie claim under the *McDonell Douglas* framework. *Bing*, 959 F.3d at 616 n.8.

Here, Alston seems to rely on the first method. He therefore must plausibly allege "(1) direct or indirect evidence of intentional discrimination (2) against plaintiff for belonging to a protected class, which motived (3) an adverse employment action." *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 817 (E.D. Va. 2016). "Direct discrimination may include . . . statements by an employee's supervisors that are generally discriminatory or statements by supervisors that indicate that their actions were motivated by the employee's" membership in a protected class, *id.* (quoting *Lee*, 2015 WL 5147067, at *3), or "evidence of a general pattern of [unlawful] discrimination in the practices of a defendant," *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017). Ultimately, the Court looks to the "totality of the circumstances" alleged in the complaint. *Whitehurst v. Bedford Cnty. Sch. Bd.*, 6:19cv10, 2020 WL 3643132, at *7 (W.D. Va. July 6, 2020).

Alston alleges that his superiors asked him to complete tasks that he contends "could have been completed by . . . the other tester with no assignments," and he asserts that the other tester "was hired [one] month before [him] . . . but [was not] . . . required to contribute to the project." (ECF No. 4, at 6–7.) Yet Alston fails to allege his membership in a protected class under Title VII. Moreover, even if the Court could discern his membership in a protected class, he fails to identify any direct or circumstantial evidence of discriminatory intent on the part of the defendants or otherwise establish that the defendants assigned the two testers different work to discriminate against Alston based on his protected status. Accordingly, Alston fails to state a disparate treatment claim under Title VII.

### *C. State Law Claims*

Alston also brings state law claims for unpaid wages in violation of Virginia retaliation, overtime, holiday pay, and human rights act statutes. Federal courts have jurisdiction over (1) cases that present a federal question, 28 U.S.C. § 1331, or (2) cases for over $75,000 that arise between citizens of different states, 28 U.S.C § 1332. When a federal court has jurisdiction over a case for one of those two reasons, it may exercise supplemental jurisdiction "over all other [related] claims." 28 U.S.C. § 1367(a). But when a court dismisses all claims over which it has original jurisdiction, the Court "may decline to exercise supplemental jurisdiction over [the related] claim[s]" that remain. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 637 (2009).

Because the Court will dismiss Alston's federal claims, leaving only state law claims, the Court lacks federal question jurisdiction. Further, because Alston only asserts claims against Virginia citizens, the Court lacks diversity jurisdiction. Moreover, this case is in the early stages of litigation, so the "values of judicial economy, convenience, fairness, and comity" weigh in favor of dismissing the state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Accordingly, the Court declines to exercise supplemental jurisdiction over Alston's state law claims and will dismiss those claims without prejudice. Because the Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims, no federal claims remain, and the plaintiff has amended his complaint once already, the Court will not grant Alston leave to amend his complaint.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Eleventh Amendment immunity bars Alston's FLSA claim, and the Court will dismiss that claim with prejudice. Further, Alston does not plead a cognizable disparate treatment claim under Title VII. The Court, therefore, will dismiss Alston's Title VII

claim with prejudice. Finally, the Court declines to exercise supplemental jurisdiction over his remaining state law claims and will dismiss those claims without prejudice.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 25 January 2023
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

13